The opinion of the c'ourt ivas delivered by

Mr. Justice Mott.
Previous to the adoption of our present constitution, sheriffs were elected by the legislature. The constitution re-quires that “ they shall be elected as they hitherto have been, Until otherwise directed bylaw,” but that they shall hold their ■ofScesfórfouryears. In the year 1808, the legislature transferred the election to the people. The act declares “ that an election shall be held on the second Monday and the day following, in January next, and on the second Monday and the day following In January,-in every year thereafter, in such of. the circuit dis-, tricts as there may then be vacancies, to be conducted in the same manner, by the same managers, and to be holden at the same places as now are or hereafter shall be appointed by law, for the conducting, managing and holding elections for members of the legislature, to elect sheriffs for the several circuit const *323 districts within this state, wherein any vacancy shall or may hereafter happen in the office of sheriff; .occasioned either by death, removal out of the state, resignation from, or expiration of office or otherwise of any person possessing the same.”
A subsequent section of the same act provides “ that the governor shall have power, and he is hereby required to fill up all vacancies in the office of sheriff, that shall take place by the death, resignation, removal out of the state, removal from or expiration of office, of any person- possessing the same, or by any election of sheriff being,declared void by the managers, ¡or when any two or more candidates shall have an equal number of votes, to hold under such appointment, until such time as an election shall take place, according to the provisions o£ this act.”
Here are two seeming contradictory clauses in the same act — . ■one giving the people the. right of election in all cases, when a vacancy shall happen, and the other giving to the governor the power of appointment, in terms equally extensive. But they are easily reconciled, when we look to the policy of the law,. The'object was to give to the people the power of electing all. tbe sheriffs throughout the state — and the second Monday of January and the day following in each, and every year, are der dared the days of election for that purpose. No writ of election is required; but the managers, ex-officio, are to proceed to to an election on those days, in all the districts where a vacancy shall then exist, from whatever cause that vacancy may have been occasioned. But they are not authorised to elect at any other time. And to prevent the inconvenience which might result from occasional vacancies in the course of the year, the governor is authorised to make temporary appointments until the day of general election shall come round.
But in the case of the State against M‘Clintock, it was held that the legislature could not authorise such temporary appointments to be made. And that whenever a sheriff is appointed, (no matter by what authority) he is in, under the constitution, for four years. The effect of that decision would have been to defeat the object, of the law entirely, and to transfer the appoints *324 rnent of the sheriffs in all cases from the people to the governor;. The act of 1822, is intended to counteract that decision, and to preserve to the people the privilege allowed them by the act of 1808. It commences with taking from the governor the power of appointment, and in its stead, authorises him to issue writs of election to the managers, appointing a time when they shall hold the election. The clause of the act of 1808, authorising the-governor to appoint, is transferred to the act of 1822, limiting the power of appointment to that of issuing writs of election. The wards of' the two clauses are as nearly the same as it waif possible to make them, except as. to the power to be exercised by the governor. It is true, the terms of the clause in the act of 1822 giving to the governors the power to issue writs of election, are very general and may he construed to embrace every Oase of vacancy; and in all probability, if there had been no ether act on the subject, would have received that construction. But they admit of a different view, when we read the two acts together, which must be done in order to give effect to either. There are no words of repeal in the latter act, neither is any stieh inference to be drawn from any of its provisions. If the act had simply taken from the governor the power of appointment, the- people, by occasional vacancies, would have been loft a great portion of the time without a sheriff — Because the managers can only hold elections by law, on the second Monday in January and the day following. To remedy that evil, the governor is authorised to issue writs of election, authoris-. ing them to hold elections at other times, whenever occasion shall require. But the remedy need not be applied, where the evil does not exist. There appears to have been an impression, that the managers could elect on the 2d Monday in January and the day following, according to the general provisions of the act, in those cases only, where the vacancy happened by the expiration of office. But|that is a mistaken view of the subject. They are authorised to ¡elect at that time in all cases, where a vacancy may then exist, at whatever time it may have occurred, or by whatever causo it may have been occasioned».-
Miller, Desaussitre, and M‘ Cord, for motion--
-Harper .and Mayrant, coptra?
The two acts then maybe constructed harmoniously together, and the two clauses rendered auxiliary to each other; •If the governor shall omit or neglect to issue writs of election whenever a vacancy shall happen, the managers may open a poll on the day required by law, and proceed to an election •without writs — if they should fail to do so, on that day the governor may issue his own writs, directing the election to be '.held on any other day. And when we see that the clauses of the act of 1822, authorizing the governor to issue writs of election, is couched precisely in the same words as the clause in the act of 1808, giving the power of appointment, except so far as was necessary to accommodate the phraseology to the new power conferred on him, it is reasonable to conclude that it was the intention of the legislature to require him to issue writs of election, in those cases only where he had before the power to appoint. That construction seems best to comport with the letter and spirit of both acts — it gives an uniform operation to both, and is the best calculated to insure an election •with the least possible delay and inconvenience.
I think, therefore, that the decision ought to be reversed • on that ground.
JVott, Gantt, Richardson, and Johnson, Justices, concur-' red.